IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

JOHN FLINN,

      Plaintiff,

v.                         CASE NO. 6:08-cv-00924

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This case was referred to this United States Magistrate Judge by standing order to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, John Flinn (hereinafter referred to as "Claimant"), protectively filed an application for SSI on December 3, 2004, alleging disability as of October 1, 2003, due to leg and back problems. (Tr. at 11, 98-101, 107.) The claim was denied initially and upon reconsideration. (Tr. at 60-64, 67-69.) On July 29, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 72.) The hearing was

held on March 29, 2006, before the Honorable Theodore Burock. (Tr. at 24-57.) By decision dated March 27, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 11-23.) The ALJ's decision became the final decision of the Commissioner on June 6, 2008, when the Appeals Council denied Claimant's request for review. (Tr. at 2-4.) On July 15, 2008, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c(a)(3)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 416.920 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 416.920(c). If a severe

2

impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.   Id. § 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. § 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 416.920(f) (2007).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 13.) Under the second inquiry, the ALJ found that Claimant suffers

3

from the severe impairments of cervical disc disease, lumbar disc disease, lung impairment, morbid obesity, headaches and edema. (Tr. at 13.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 19.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations.  (Tr. at 19.)  Claimant has no past relevant work.  (Tr. at 22.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as packager, laundry folder and bottling line attendant, which exist in significant numbers in the national economy.  (Tr. at 23.)  On this basis, benefits were denied.  (Tr. at 24.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.   In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with

4

resolving conflicts in the evidence. <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was thirty-eight years old at the time of the administrative hearing. (Tr. at 24, 30.) Claimant completed the eighth grade and testified that he can read and write. (Tr. at 33.) In the past, Claimant worked for a roofer and hauling junk, sometimes earning wages but not paying taxes. (Tr. at 33, 46, 48.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On January 13, 2005, Stephen Nutter, M.D. examined Claimant at the request of the State disability determination service. Claimant complained of hip, knee and right shoulder pain. Dr. Nutter found that Claimant had chronic back and neck pain without evidence of radiculopathy and arthralgia with degenerative arthritis. (Tr. at 172.) Claimant had decreased range of motion in the back and neck. Straight leg raising was negative. There

was no evidence of rheumatoid arthritis. (Tr. at 173.) A ventilatory function report indicated that Claimant was borderline normal for restrictive disease. (Tr. at 175.) Dr. Nutter noted that Claimant's "[g]rip strength was a little diminished on the right. Fine manipulation skills were intact and sensory modalities were intact with the exception of the left fifth digit as noted above. Muscle strength testing was intact otherwise except for the hips. There is no definite evidence of nerve root compression." (Tr. at 173.)

On February 8, 2005, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, with an inability to climb ladders, ropes and scaffolds, an occasional ability to climb, balance, stoop, kneel, crouch and crawl, a need to avoid concentrated exposure to extreme cold and heat and a need to avoid all exposure to hazards. (Tr. at 178-85.)

The record includes treatment notes from the Good Samaritan Clinic. On April 19, 2005, Claimant had edema in his hands and feet and hip, neck and right shoulder pain. Claimant had been in a car wreck several years earlier. Claimant weighed 294 pounds and was 5 feet 9 and 1/2 inches tall. (Tr. at 187.)

On July 18, 2005, Claimant reported to the emergency room with complaints of a twisted ankle and pain in the back, hips and legs for several months. (Tr. at 205.) X-rays of the lumbar spine

showed mild degenerative disc disease most pronounced at L3-4 and L4-5. There was no evidence of an acute fracture or dislocation. (Tr. at 207.) X-rays of the ankle showed mild soft tissue swelling laterally, but no evidence of an acute fracture or dislocation. (Tr. at 208.)

The record includes treatment notes from Cornerstone Health Care. On July 26, 2005, Claimant was seen in follow up from the emergency room for ankle, leg, shoulder and lower back pain after he fell and sprained his right ankle. Claimant had been prescribed Vicodin and Naproxen, which helped tremendously, but he had since run out. Claimant had full range of motion in all joints. Christopher Edmands, D.O. recommended a cervical and lumbar MRI. (Tr. at 191-93.)

An MRI of the lumbar spine on August 14, 2005, showed a cogenitally small spinal canal from L1 to L5 most prominent at L2/3 and L3/4 levels. There was no disc protrusion or focal nerve root compression identified. There were subtle changes of degenerative disc disease with dessication of the intervertebral discs at L2/3, L4/5 and L5/S1 levels. (Tr. at 195.)

An MRI of the cervical spine on August 10, 2005, showed right paracentral disc herniation at C5/6 with marginal spurring combined with mild pre-existing congenital canal stenosis resulting in marked central canal and marked right lateral recess stenosis. There was impingement of the right ventral cord with abnormal cord

signal consistent with cord edema or less likely early myelomalacia. There was no impingement of the right C6 nerve. Neurosurgical referral was recommended. There was also mild congenital central canal stenosis from C2/3 to C4/5. (Tr. at 196.)

The record includes treatment notes from Joel Shiffler, M.D. of Family Healthcare. On January 24, 2006, Claimant complained of neck, shoulder and low back pain and headaches. Claimant was diagnosed with weight gain, canal stenosis, hyperlipidemia and insomnia. (Tr. at 227.) On February 21, 2006, Claimant complained of aching and bilateral pain in his arms, back and neck and lightheadedness. Claimant was diagnosed with a fatty liver, hyperlipidemia and hypertension. (Tr. at 218.) The record includes a March 3, 2006, treatment note from Dr. Shiffler. (Tr. at 235.)

An MRI of the lumbar spine on March 13, 2006, showed facet fluid in the lower lumbar region. There was intrinsic narrowing of the pedicles in the anterior to posterior dimension at the L2, L3 and L4 levels, however, there was no nerve root deviation or dilatation. (Tr. at 210.)

The record includes treatment notes from Dr. Allen Figueroa of Emerson Healthcare Inc. On March 13, 2006, Claimant complained of a disturbance in balance, headache and neck pain. (Tr. at 214.) On March 22, 2006, Claimant complained of pain everywhere. He was diagnosed with chronic low back pain, morbid obesity and anxiety.

(Tr. at 215.)

An MRI of the cervical spine on March 13, 2006, showed a C5-6 marginal osteophyte and disc bulge complex.  There was narrowing in the ventral subarachnoid space.  There was neural foraminal narrowing noted at C5-6.  There was no cord compression or significant canal compromise.  (Tr. at 211-12.)

The record includes a report from Kalapala Seshagiri Rao, M.D. dated March 24, 2006.  Claimant complained of low back and neck pain.  Claimant had tenderness of the lumbar paraspinals, tenderness of the LS triangle and no tenderness in the lumbosacral area.  Claimant had a decrease in flexion and extension and a normal lateral flexion.  Straight leg raising was forty degrees on the right and left.  (Tr. at 230.)  Dr. Rao's impression was chronic neck pain, chronic low back pain and degenerative disc disease.  He prescribed Vicodin and Flexeril.  (Tr. at 231.)  On April 20, 2006, Claimant reported constant neck pain and headaches and shoulder pain.  Dr. Rao noted that Claimant no longer wanted to take Flexeril.  (Tr. at 234.)

On September 25, 2006, Dr. Figueroa certified on a West Virginia Division of Motor Vehicles application for a parking pass for mobility impaired persons that Claimant was severely limited in his ability to walk due to an arthritis, neurological or orthopedic condition.  (Tr. at 236.)

The record includes additional treatment notes from Dr.

9

Figueroa dated April 20, 2006, May 10, 2006, August 10, 2006, September 7, 2006, and October 6, 2006. Claimant was treated for hypertension, edema, anxiety and chronic pain. (Tr. at 244-51.)

The record includes additional treatment notes from Dr. Rao dated April 20, 2006, May 18, 2006, June 15, 2006, July 13, 2006, August 10, 2006, September 7, 2006, October 5, 2006, November 2, 2006, and January 30, 2007. Claimant was treated for low back pain and was prescribed Vicodin. (Tr. at 252-54.)

The record includes additional treatment notes from Dr. Figueroa dated November 27, 2006, January 5, 2007, January 17, 2007, and February 5, 2007. Claimant was diagnosed with diabetes, seizures, sleep apnea, anxiety, hypertension, hyperlipidemia and obesity. (Tr. at 255-73.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in his pain and credibility analysis; (2) the ALJ did not properly consider Claimant's mental condition; (3) the ALJ relied upon an incomplete hypothetical question; (4) the ALJ failed to consider Claimant's impairments in combination; (5) the ALJ improperly discounted the opinions of Claimant's treating physicians; and (6) the ALJ failed to consider Claimant's obesity. (Pl.'s Br. at 2-12.)

The Commissioner argues that (1) substantial evidence supports

10

the Commissioner's final decision that Claimant was not disabled;
(2) the ALJ properly considered Claimant's subjective complaints;
(3) the ALJ considered Claimant's impairments in combination; (4)
the ALJ properly weighed the evidence of record from treating
sources; and (5) the ALJ's hypothetical question included those
limitations supported by the evidence of record.  (Def.'s Br. at 7-
14.)

Pain and Credibility

Claimant first argues that the ALJ erred in assessing his
subjective complaints of pain and credibility.  Claimant asserts
that he was on pain medications that are known to cause certain
side effects, including sleepiness and drowsiness, but the ALJ
found no evidence of medication side effects that would interfere
with jobs identified by the vocational expert.  In addition, the
ALJ made conclusory findings about Claimant's credibility.
Finally, Claimant argues that the ALJ discredited his testimony
about pain because he was not receiving ongoing treatment from a
specialist, but he was unable to obtain such treatment because his
medical card was restricted.  (Pl.'s Br. at 2-7.)

The court proposes that the presiding District Judge find that
the ALJ's pain and credibility findings are consistent with the
applicable regulation, case law and social security ruling ("SSR")
and are supported by substantial evidence.  20 C.F.R. § 416.929(b)
(2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater,

11

76 F.3d 585, 594 (4th Cir. 1996).   In his decision, the ALJ determined that Claimant met the first prong of the pain analysis because he produced evidence of impairments that could reasonably be expected to cause the alleged symptoms.  (Tr. at 19.)  The ALJ proceeded to the second step, and his decision contains a thorough consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's pain, and precipitating and aggravating factors.  (Tr. at 20-22.)

In his decision, the ALJ noted Claimant's testimony of constant pain, daily migraine headaches, an inability to walk more than a block, an inability to sit for more than five to ten minutes without changing positions, and passing out episodes.  The ALJ rejected many of these complaints based on Claimant's inconsistent statements and the lack of medical evidence supporting them.  The ALJ also relied on the fact that Claimant "completed a Function Report on May 4, 2005, which reflects that he often watched television and that he watched his two children (ages 6 and 13) after picking them up from school until their mother returned from work (Exhibit 6E)."  (Tr. at 20.)

In addition, the ALJ relied on the objective evidence of record, including Dr. Nutter's consultative examination on January 13, 2005, Dr. Rao's examination on March 24, 2006, and the x-ray and MRI evidence cited above.  (Tr. at 20-21.)  Notably, the ALJ astutely observed that "[t]he evidence reflects no intensification

12

of treatment, which would be expected if the claimant suffered as alleged.  The evidence reflects no side-effects of medications that would interfere with jobs identified by the vocational expert."  (Tr. at 21.)

The ALJ observed that Claimant had a history of "working under the table" earning $5,000 to $20,000 per year.  In addition, after his alleged onset, Dr. Figueroa noted on January 5, 2007, that Claimant had grease embedded in the creases of his hands/digits and under his fingernails.  (Tr. at 21.)  The ALJ found that working under the table and not declaring income reflected poorly on Claimant's credibility.  (Tr. at 21-22.)  Based on the above, Claimant's assertion that the ALJ did not cite the evidence upon which he relied in rejecting Claimant's credibility or that his findings were conclusory is simply not true.

Claimant also complains that the ALJ improperly rejected his credibility because he was not seeking ongoing treatment from a specialist.  (Pl.'s Br. at 7.)  Claimant asserts that he did not seek treatment from specialists because he had a restricted medical card, but that he has sought treatment at emergency departments and general practitioner's offices where he has obtained pain medication.  Claimant was seen on a fairly regular basis by Drs. Shiffler, Figueroa and Rao, and they prescribed medication and sent him for diagnostic tests including MRIs.  The medical evidence from these sources simply does not support the severity of limitation

alleged by the Claimant.   The substantial evidence of record indicates that Claimant received ongoing but conservative medical care from the medical sources of record.   The fact that Claimant may have had a restricted medical card does not negate the fact that when Claimant received medical care, it was conservative in nature and not indicative of a disabling impairment.

Finally, Claimant complains that he was on medication known to cause sleepiness and drowsiness, but that the ALJ found no medication side effects that would interfere with the jobs identified by the vocational expert.   (Pl.'s Br. at 5.)   The administrative record does not indicate problems with medications side effects, nor did Claimant identify any in his brief.   While Claimant may be on medications that are known to cause certain side effects, the medical evidence does not indicate that Claimant had such side effects or that they limited Claimant in any way.

Mental Condition

Next, Claimant argues that the ALJ discounted his anxiety, for which he was prescribed Xanax.   (Pl.'s Br. at 5.)

The court proposes that the presiding District Judge find that the ALJ properly considered Claimant's mental impairment in keeping with the analysis outlined at 20 C.F.R. § 416.920a (2007), and his finding are supported by substantial evidence.   The ALJ found that Claimant had a medically determinable mental impairment.   (Tr. at 18.)   The ALJ gave Claimant the benefit of the doubt regarding his

generalized anxiety disorder, even though the medical evidence of record does not offer a supporting rationale for such a diagnosis. The ALJ proceeded in the sequential analysis for evaluating mental impairments cited above, and determined that Claimant had no restriction in activities of daily living, social functioning and concentration, persistence and pace and no episodes of decompensation of extended duration.  (Tr. at 18.)  As a result, the ALJ concluded that Claimant's mental impairment was not severe. Nevertheless, the court notes that the ALJ included in his residual functional capacity finding, the limitation of routine, repetitive tasks.  (Tr. at 19.)  The ALJ's findings regarding Claimant's mental impairment are supported by substantial evidence, and the court proposes that the presiding District Judge so find.

<u>Incomplete Hypothetical</u>

Claimant argues that the ALJ erred in failing to include in his hypothetical question, a limitation about Claimant's inability to extend his arms out in front of him for any length of time. Claimant asserts that he is unable to use his arms for extended periods of time because of the numbness and tingling in his hands as a result of radiating neck pain, pain and tenderness in his shoulders, right elbow and wrist and bilateral diminished grip strength.  (Pl.'s Br. at 4.)

To be relevant or helpful, a vocational expert's opinion must be based upon consideration of all evidence of record, and it must

be in response to a hypothetical question which fairly sets out all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 51 (4th Cir. 1989). "[I]t is difficult to see how a vocational expert can be of any assistance if he is not familiar with the particular claimant's impairments and abilities -- presumably, he must study the evidence of record to reach the necessary level of familiarity." Id. at 51. Nevertheless, while questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Additionally, the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe. Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983).

In his decision, the ALJ found Claimant capable of light work, reduced by a need for jobs involving routine, repetitive tasks, occasional ability to climb ramps and stairs, an inability to climb ladders, ropes or scaffolds, an ability to occasionally balance, stoop, kneel, crouch and crawl, a need to avoid concentrated exposure to poor ventilation, and a need to avoid all exposure to hazards such as unprotected heights and dangerous machinery. (Tr. at 19.) The ALJ included these limitations in his hypothetical question, and the vocational expert identified the jobs of packager, laundry folder and bottling line attendant. (Tr. at 52-

16

53.)

Claimant's counsel added to the hypothetical question, the limitation that Claimant could only occasionally work with his hands extended out in front of him, and the vocational expert testified that Claimant could not perform the jobs identified because they require frequent use of the upper extremities. (Tr. at 54.)

In his decision, the ALJ acknowledged the testimony of the vocational expert, but found that "the objective medical evidence does not support limitations" included by Claimant's counsel in the hypothetical question. (Tr. at 23.) Earlier in his decision, the ALJ noted Dr. Nutter's report during which Claimant reported numbness and tingling in the last three digits of both hands. However, the ALJ further observed that

> [d]uring a consultative physical examination by Dr. Nutter on January 13, 2005, the claimant reported numbness and tingling in the last three digits of both hands. Examination revealed pain [in] the claimant's right elbow and pain and tenderness of the right wrist. The claimant had a negative Tinel's sign at the wrist and elbow. Ranges of motion of the claimant's right elbow were 10 to 120 degrees on the left and 0 to 125 degrees on the right. Supination was reduced at 70 degrees, and pronation was normal. Right wrist extension was reduced at 50 degrees, but normal on the left. Wrist flexion was normal bilaterally. Examination of the claimant's wrists revealed no redness, warmth, swelling, or nodules. Examination of the claimant's hands revealed no tenderness, redness, warmth, or swelling. The claimant was able to make a fist bilaterally. He could write and pick up coins with either hand without difficulty. Ranges of motion of the joints of the finger on both hands were normal. Grip strength was graded as 5/5 on the left and 4-41/2/5 on the right. Sensory modalities

17

> were well-preserved with the exception that the claimant reported no feeling to pinprick with the left fifth digit and lateral part of the palm proximal to the fifth digit.
>
>            ***
>
> The objective medical evidence does not support numbness of the upper extremities to the extent alleged by the claimant. Sensory examinations have been normal with the exception of decreased feeling to pinprick of the left fifth digit area on January 13, 2005 (Exhibit 1F). Tinel's signs have been negative.

(Tr. at 17.)

The ALJ adequately explained his reasons for not accepting the limitations posed by Claimant's counsel in the hypothetical question. Limitations related to Claimant's use of his upper extremities simply are not supported by the medical evidence of record, and the court proposes that the presiding District Judge so find.

Combination/Obesity

Claimant argues that the ALJ failed to consider the combined effect of his impairments. In addition, Claimant argues that the ALJ failed to discuss the impact of Claimant's obesity. (Pl.'s Br. at 7-9.)

The social security regulations provide,

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.

20 C.F.R. § 416.923 (2007). Where there is a combination of

impairments, the issue "is not only the existence of the problems, but also the degree of their severity, and whether, together, they impaired the claimant's ability to engage in substantial gainful activity." Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir. 1974). The ailments should not be fractionalized and considered in isolation, but considered in combination to determine the impact on the ability of the claimant to engage in substantial gainful activity.   Id.   The cumulative or synergistic effect that the various impairments have on claimant's ability to work must be analyzed. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

The court proposes that the presiding District Judge find that the ALJ properly consider Claimant's impairments, both alone and in combination in keeping with the above regulation and caselaw.  The ALJ considered Claimant's impairments in combination in making a severity finding, in analyzing Claimant's pain and in reaching his residual functional capacity finding.

Furthermore, the ALJ considered Claimant's obesity and found it to be a severe impairment. (Tr. at 13.)  The ALJ's residual functional capacity finding adequately reflects limitations resulting from Claimant's obesity.  Importantly, the ALJ largely adopted the opinion of the State agency medical source, Thomas Lauderman, M.D., who acknowledged Claimant's obesity in completing the Physical Residual Functional Capacity Assessment.  (Tr. at 182.)

19

<u>Treating Physician</u>

Finally, Claimant argues that the ALJ erred in rejecting the opinion of Dr. Figueroa that Claimant required a disabled parking permit.  Claimant asserts that the ALJ "is not a medical expert and should there be medical issues with diagnoses it is proper to elicit testimony from a medical expert at the hearing." (Pl.'s Br. at 5.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  <u>See</u> 20 C.F.R. § 416.927(d)(2) (2007).  Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." <u>Ward v. Chater</u>, 924 F. Supp. 53, 55 (W.D. Va. 1996); <u>see also</u>, 20 C.F.R. § 416.927(d)(2) (2007).

Under § 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Section 416.927(d)(3), (4), and (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an

20

opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 416.927(d)(2).

Under § 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner.  Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986).

The court proposes that the presiding District Judge find that the ALJ adequately weighed the opinion of Dr. Figueroa in keeping with the applicable regulation and case law, and his findings are supported by substantial evidence.  The ALJ explained that he

rejected the opinion of Dr. Figueroa that Claimant needed a disabled parking permit based on severe limitations in walking secondary to arthritis or a neurological or orthopedic condition because it was not supported by the objective medical evidence. In fact, neither Dr. Figueroa's treatment notes nor the remaining evidence of record supports such a limitation.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable Joseph R. Goodwin, Chief Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a

waiver of appellate review by the Circuit Court of Appeals.  <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Chief Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

<u>   May 6, 2009   </u>
      Date

                        Mary E. Stanley
              United States Magistrate Judge